**FILED**

SEP 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Clerk of the Court
333 Constitution Ave., NW
Washington, DC 20001

RAQUEL Y. GORDON )
6332 Southlake Court )
Bryans Road, MD 20616 )
      *PHONE NOT GIVEN*  Pro Se Plaintiff, ) Civil No. Not Yet Assigned
 )
v. ) **COMPLAINT**
 )
CARLOS GUTIERREZ, Secretary ) CASE NUMBER  1:05CV01926
DEPARTMENT OF COMMERCE )
(Patent and Trademark Office) ) JUDGE: Reggie B. Walton
1401 Constitution Avenue NW )
Washington, DC 20230 ) DECK TYPE: Employment Discrimination
 )
HOWARD GOLDBERG, Individual, ) DATE STAMP: 09/29/2005
U.S. Patent and Trademark Office )
Madison Building )
Alexandria, VA 22313 )
 )
MARGARET FOCARINO, Individual, )
U.S. Patent and Trademark Office )
Madison Building )
Alexandria, VA 22313 )
 )
NANCY LE, Individual )
U.S. Patent and Trademark Office )
Madison Building )
Alexandria, VA 22313 )
 )
JOHN BARLOW, Individual, )
U.S. Patent and Trademark Office )
Jefferson Building )
Alexandria, VA 22313 )
        Defendants. )
 )


JURY ACTION

R. Gordon                                         Page 1 of 20         1

# I. INTRODUCTION

This complaint seeks declaratory and injunctive relief and damages, against defendant Department of Agriculture for violations of her equal employment opportunity rights, privacy rights, and anti-discrimination, anti-harassment, anti-hostility rights. Plaintiff seeks actual, compensatory, and punitive damages, attorneys fees and costs from the defendants as a result of the harms caused by defendants' willful, intentional, egregious and unlawful behavior.

# II. JURISDICTION AND VENUE

a. This court has jurisdiction pursuant to United States Code, Title 5, section 2302, Title VII of the Civil Rights Act of 1964, as amended in 1991, the Whistleblower Protection Act for 1994, as amended, United States Code 42, §1981 promoting equal rights under the law, the Equal Pay Act of 1963 (EPA), Federal Tort Claims Act, 28 U.S.C. S 2680, the Privacy Act of 1974, 5 U.S.C. § 522, as amended states.

b. Venue is proper in this District pursuant to 5 U.S.C. § 552a(g)(5), 28 U.S.C. § 1391, 15 U.S.C. 78aa and 77v, and 7 U.S.C. Section 25(c).

# III. PARTIES

a. Plaintiff Raquel Y. Gordon, Pro Se, is a citizen of the United States and a former employee of the U.S. Patent and Trademark Office, an Agency under the U.S. Department of Commerce. Plaintiff resides at 6332 Southlake Court, Bryans Road, MD 20616 (hereinafter, "Plaintiff").

 b. Defendant Carlos Gutierrez, is the official representative of the United States Department of Commerce is an agent of the United States Government, located at 1401 Constitution Avenue, NW, Washington, D.C. 20230 (hereinafter, "Agency"). Other named defendants are Agency employees.

### IV. Procedural History

a. Complaint filed a formal equal employment opportunity ("EEO") complaint on May 25, 2001.

b. The Agency filed a motion for summary judgment contending Plaintiff was not discriminated against, harassed, subject to a hostile work environment, and denied career advancement opportunities.

c. Plaintiff opposed this agencies contentions indicating she was discriminated against, harassed, subject to a hostile work environment, and denied career advancement opportunities.

d. The AJ issued a decision without a hearing finding no genuine issue of material fact in dispute.

e. A Request for Reconsideration was presented by Plaintiff, but the request for reconsideration was denied.

f. This complaint is now timely filed.

### V. Standards of Law

a. United States Code, Title 5, section 2302, prohibiting unlawful personnel practices.

b. Title VII of the Civil Rights Act of 1964, as amended in 1991, and codified at 42 USC 2000(e) prohibits discrimination based on race, color, or sex.

c. The Whistleblower Protection Act for 1994, as amended, provides freedom for retaliation for whistleblower activities.

d. United States Code 42, §1981(A) promoting equal rights under the law.

e. the Equal Pay Act of 1963 (EPA), which protects men and women who perform substantially equal work in the same establishment from sex-based wage discrimination.

f. Federal Tort Claims Act, 28 U.S.C. S 2680(h) which protects employees from negligence of Agency personnel.

g. The Privacy Act of 1974, 5 U.S.C. § 522(a), as amended states:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

## VI. Background Facts

1. The Plaintiff, Ms. Raquel Gordon, an African American female, alleges she experienced discrimination in the workplace starting as early as approximately December 1997.

2. She was a GS-13 and GS-14 Patent Examiner in Technology Center 2800/Art Unit 2853.

3. The basis of the discrimination is sex, race, sexual harassment, reprisal, and hostile work environment. She further alleges that these illegal actions were caused by two of her supervisors, Nancy Le, a Vietnamese female and John Barlow, a Caucasian male, and second line supervisor Howard Goldberg, a Caucasian male.

4. From approximately 1995, before Nancy Le was a supervisor, the Plaintiff developed a social relationship with Nancy Le in and outside of the workplace. The two of them occasionally visited each other's families, had lunch, dinner, shopped, and shared other social events together.

5. Nancy Le became a co-supervisor with Ben Fuller, an African American male, from approximately Spring 1997 to November 1997 wherein Nancy Le requested to be Plaintiff's sole supervisor and was Plaintiff's sole supervisor starting from approximately November 1997.

6. As their social relationship grew, Nancy Le asked the Plaintiff to have sex with Nancy Le's husband. This occurred between approximately November 1997 and January 1998. Plaintiff refused and persisted in refusing even after Nancy Le continued to pressure Plaintiff on a daily basis. Nancy Le's husband also telephoned and emailed the Plaintiff at work requesting sexual favors. The Plaintiff adamantly refused to comply with their requests.

7. From that point on Plaintiff noticed that Nancy Le reviewed her work differently. Similar work that had been approved in the past was now being refused and returned for additional searches. The Plaintiff's work was being held up, placed on the bottom for review, and not tracked in PALM. The PALM reports appeared as if she was not turning in her work. In the past Nancy Le would defend the Plaintiff's search cites after review by primary examiners. The Plaintiff believes that after she refused the sexual overtures, her

supervisor stopped defending her work and began to make negative comments to the primary examiners regarding Plaintiff's work.

8. When the Plaintiff told Nancy Le that she felt she was being retaliated against for not agreeing to have sex with her husband, Nancy Le responded that she was being "paranoid."

9. Throughout this period Plaintiff continued to examine patent applications and demonstrate professionalism in the workplace. She observed that her supervisor's treatment of her cases became worse after Plaintiff's sister-in-law passed away.

10. This was a particularly difficult time for the Plaintiff. Nancy Le continued to send her on "wild goose chases" to search areas for prior art that often was not relevant to her examination. Other primary examiners remarked that some of the "wild goose chases" were not proper searches. These unnecessary searches were time consuming. Wasting time meant having less time for other production. The Plaintiff says that other primary examiners supported her references and acknowledged it was not necessary to cite other searches.

11. Plaintiff's rating for FY97 was fully successful. She spent one fiscal quarter under Nancy Le's supervision and received an oral warning for sub-par production. The Plaintiff believes that her decision not to have sex with her supervisor's husband prompted the disparate and discriminatory treatment.

12. The Plaintiff requested a transfer to another Art Unit during August 1998 - September 1998. She made her request to her Director, Margaret Focarino, and informed her of Nancy Le's sexual harassment. Initially the Director indicated transferring Plaintiff before the end of the fiscal year was over was unfair as it would affect the supervisor bonuses. Dir. Focarino also indicated she "didn't want to lose an examiner [to another Director]" since it "would not look good." The Director addressed the matter by transferring the Plaintiff to Ben Fuller's art unit at the beginning of the next fiscal year starting in October 1998. This delay gave Plaintiff no opportunity to get her cases signed and reviewed properly to avoid less than satisfactory production.

13. Plaintiff's oral warning was removed during Oct 1999. The Plaintiff alleges that she wrongfully received the oral warning under Nancy Le. It delayed her grade 13 and step increase an additional 6 months. Further, it disqualified Plaintiff for the Law School Tuition Assistance Program. The Plaintiff believes she was fairly treated under Ben Fuller's supervision and the work went well. Ben Fuller was her supervisor until spring 1999. Around this time, John Barlow replaced Ben Fuller.

14. Plaintiff alleges that discriminatory actions resumed after she was assigned to Barlow's Art Unit. Since he and Le were peers and friends, the Plaintiff got the impression that her new supervisor came to the Art Unit with pre-conceived and prejudicial notions about her work. According to the Plaintiff, Barlow had preconceived notions about her production until he saw her production reports. He appeared surprised that the Plaintiff's work productivity was good.

15. The supervisory team of Fuller, Barlow, and Le worked to support each other during vacation periods. Whenever Fuller, or later Barlow, was out of the office, Le was in charge of their art units. Plaintiff was afraid that Nancy Le's discriminatory treatment of her work would start over again. And, in fact, Plaintiff felt the discriminatory treatment did continue confirming her fears. As an example, Plaintiff had to complain to the Director because of the way Nancy Le handled some of her cases.

16. Plaintiff alleges during Apr 2000 she informed Barlow about past cases and problems she had with Nancy Le, including the unwanted sexual proposition with her husband. Barlow responded that he would not talk to anyone about it, not even his wife. He also reassured the Plaintiff that when he was out of the office he would allow Nancy Le to review her cases. However, Barlow related to an EEO director that he reported Complaints of unwanted sexual propositions by Nancy Le to his new Director, Howard Goldberg.

17. Plaintiff alleges that between approximately August 2000 and September 2000, she told Howard Goldberg, Director Technology Center 2800 (Caucasian male) about Nancy Le's unwanted sexual overtures. She went to the Director because she was on the partial signatory program. She feared that since Nancy Le was one of the supervisors that could be assigned to review her work, the retaliation would resume.

18. Prior Director Focarino indicated Nancy Le would not review Plaintiff's work. Nancy Le was not allowed to review the Plaintiff's cases. After confirming Plaintiff's understanding, Goldberg indicated Nancy Le would not review Plaintiff's work. However, Ex. Gordon came to the belief that Nancy Le was reviewing her work and became fearful of not passing.

19. Plaintiff's discussion with Dir. Goldberg continued. Plaintiff explained that Barlow continued to undermine her production by wrongfully holding a case for 5 months. The case was one which Nancy Le originally reviewed and unfairly held over even after Complaints were made to then Dir. Focarino.

20. Plaintiff noted there were three (3) to five (5) of Plaintiff's cases behind John Barlow's desk that had not been reviewed or signed by the supervisor. Furthermore, the Plaintiff alleges that while all of the other examiners in the Art Unit were allowed to retrieve their cases from behind the supervisor's desk, she was not. Plaintiff believes that this different treatment was discriminatory and unwarranted. She believes that the impact of the decision harmed her rapport with outside attorneys and peers because she was unable to access critical cases.

21. Her production also suffered. The Plaintiff believes she was the only examiner in the Art Unit who had to ask the Director (Howard Goldberg)' each time she needed to retrieve a case behind her supervisor's desk in order to address a customer query. With this type of treatment, the Plaintiff wondered if her peers, primary examiners and other supervisors questioned her competence.

22. During August 2000 Plaintiff requested Barlow's permission to learn the classification system. Her white examiner peers were given the opportunity. All, at the time were junior examiners. Even when the white examiners were overwhelmed with work, the Plaintiff was overlooked for an opportunity to classify. A junior examiner was assigned instead.

23. The Plaintiff at the time was the senior examiner in her Art Unit and expected to be given opportunities to learn classification before junior examiners. The Plaintiff told her supervisor that she was the most senior examiner in the art unit and she was not being allowed to do other examining related activities.

24. The supervisor said he would allow her to classify cases. He pulled cases to be classified from the white examiner's offices and she received minimal guidance from him on the use of automated classification tools. Plaintiff alleges she was told classifiers would thereafter work in a group, not alone. However, Plaintiff knew this policy did not apply to white examiners and/or male examiners.

25. Furthermore, white examiners were able to access cases in the supervisor's office individually. Plaintiff was not given the same opportunity as her peers. In addition, the Plaintiff alleges that since classification could only be performed on the supervisor's computer under this new policy, everyone involved in the activity was given access to the supervisor's office and computer except her.

26. Plaintiff was later directed by her John Barlow not to use his computer when he was out and not to retrieve cases behind his desk. The Plaintiff observed a different standard was applied to the white and/or male examiners. They were allowed to use the supervisor's computer and given access to cases behind his desk even when he was out of the office. The Plaintiff alleges that she was not allowed to use the supervisor's computer and felt discriminated against and denied equal developmental opportunities. Plaintiff

existed wherein she believed the supervisors engaged in misconduct since they violated cycle-time laws established by Congress.

36. Approximately the next day, Howard Goldberg and John Barlow returned some cases to Plaintiff, and gave her only a few at a time thereafter.

37. Sometimes John Barlow would leave the office without assigning cases to Plaintiff and once went on an extended vacation without assigning her cases. Plaintiff continued to be fearful of not being able to obtain her production. Plaintiff had a shorter amount of time in which to complete work when it was finally assigned, but was held to the same quality standards as when she had a longer opportunity to work on the cases.

38. When Plaintiff complained to Dir. Goldberg, he regularly indicated Plaintiff needed to work out any difficulties with John Barlow.

39. During the partial signatory program, Plaintiff expected guidance from her supervisor similar to other white examiners. Plaintiff alleges that most of the guidance she received came from other supervisors. One example she cited referenced her need for help on production calculations. Her supervisor did not provide assistance. The Plaintiff believes that examiners on the partial signatory program should receive frequent feedback from their supervisor. Since she did not receive supervisory feedback, she believes her career development was being negatively impacted.

40. The Plaintiff alleges that her supervisor, Barlow, has a competitive approach with her that

he does not have with other examiners. She believes that her work was being challenged in a competitive manner that is different from her white peers. In spite of lack of support from her supervisor, Plaintiff passed the partial signatory program. She felt like she went through the program alone and her fear of not being successful surmounted.

41. Plaintiff alleges that her Barlow systematically released every probationary minority examiner in his art unit that was selected by the hiring committee up to and including the time the initial EEO complaint was lodged. She believes this practice is racially discriminating.

42. Overall, plaintiff received less in bonuses and lower ratings than others similarly situated co-workers for the same or better production and quality of work.

43. Plaintiff was subject to an intense amount of stress and anxiety regarding allegations set forth herein and was only recently, as of the date of this filing, diagnosed to have sustained injuries by such activities subjected to herein.

### VII. Causes of Actions

As pertains to the facts below, Plaintiff has been subject to violations in accordance with the Standards of Law indicated in section V, herein:

    a. In light of the facts presented in items 1-43, Plaintiff was sexually harassed and received latent injuries attributed thereto.

j.  In light of the facts presented in items 1-43, Plaintiff was intentionally unlawfully discriminated against based on reprisal.

k.  In light of the facts presented in item 27, Plaintiff's was intentionally subject to a hostile work environment.

l.  In light of the facts presented in item 27, Plaintiff's privacy rights were violated.

m.  In light of the facts presented in item 42, Plaintiff's was subject less or denial of bonus in violation of her equal pay rights.

n.  In light of the facts presented in items 1-43, Plaintiff was subject to prohibited personnel practices.

o.  In light of the facts presented in items 1-43, Plaintiff was subject to retaliation for whistleblower activities.

p.  In light of the facts presented in items 1-43, Plaintiff was subject to negligence under Federal Tort Claims Act.

q.  In light of the facts presented in items 1-43, Plaintiff was subject to abuse of process under Federal Tort Claims Act.

r.  In light of the facts presented in items 1-43, Plaintiff was subject to misrepresentation under Federal Tort Claims Act.

s.  In light of the facts presented in items 1-43, Plaintiff was subject to deceit under Federal Tort Claims Act.

t.  In light of the facts presented in items 1-43, Plaintiff was subject to interference with contract rights.

u.  In light of the facts presented in items 1-43, Plaintiff was subject to libel under Federal Tort Claims Act.

v.  In light of the facts presented in items 1-43, Plaintiff was subject to slander under Federal Tort Claims Act.

w.  In light of the facts presented in items 1-43, Plaintiff was subject to sever emotional distress.

x.  In light of the facts presented in items 1-43, Plaintiff was intentionally subject to sever emotional distress.

## VIII.  CONCLUSION

Prayer For Relief- WHEREFORE Plaintiff requests:

a.  a jury trial;

b.  for a cease and desist by the Agency of all retaliation and harassment;

p.  Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(f) or V(k) herein;

q.  Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(l)-V(t) herein;

r.  for any other remedy a jury deems appropriate to compensate for injuries caused by V(a)-V(t);

_____
Raquel Y. Gordon, Plaintiff, Pro Se