[ FAX COVER PAGE ]

DATE : 12/29/2005

TO :  NAME : Alan Burch
      FAX NO. : 202-514-8780

FROM : NAME : Raquel Y. Gordon
       FAX NO. : N/A

Number of Pages : 6   (including cover page)

Subject / Notes :

Civil Action No. 05-1926-RBW

Raquel Y. Gordon v Carlos Gutierrez- et al.
pp. 11, 12, 14, 15, and 18

further believes that these denials hindered her development and preparation for a GS-14 promotion. The Plaintiff informed her supervisor that she was not being given time to learn other tasks like her white peers.

27. The Plaintiff alleges that Barlow asked the EAP counselor to verify her attendance to counseling sessions and discussed this matter during a supervisors/managers meeting. Others heard him. The Plaintiff believes that her supervisor's statement discredited her before seniors that would review her work. She feared believes that the EAP disclosure had an adverse impact on her future at the Patent Office and with other work relationships.

28. In October 2000, Plaintiff attached comments to her performance appraisal indicating the discriminatory, retaliatory and hostile treatment she was subjected to by John Barlow and Nancy Le.

29. During the partial signatory examination period, starting as early as November 2000, Nancy Le and John Barlow secretly transferred cases from the bottom of Plaintiff's docket without informing Plaintiff, during a crucial period while Plaintiff was on the Signatory Authority Program, in order to intentionally lessen Plaintiff's possibilities for success.

30. Plaintiff maintains Nancy Le, John Barlow, and Howard Goldberg hid cases on a secret docket for in order to intentionally discriminate and retaliate against Plaintiff subjecting her to a hostile work environment.

R. Gordon                                                                 Page 11 of 20

31. Some of the hidden cases were also placed on the dockets of Nancy Le's examiners and on other examiner dockets in Group 2800.

32. Plaintiff was taunted by John Barlow and Nancy Le to train examiner's in Nancy Le's art unit in on how to examine the "hidden" cases and Plaintiff was downgraded when she could not reasonably comply to unreasonable requests for training.

33. Plaintiff was given less duties to train junior examiners and other examining related activities than white male examiners lessening her career development opportunities.

34. The Plaintiff was harassed when she was counseled on March 15, 2001 by her Barlow for using the wrong procedure to transfer cases to the right examiners. She was directed to follow the correct procedure. The Plaintiff tried to explain that the cases should be assigned to someone else, so she transferred them to her supervisor's docket. Unlike other examiners, the Plaintiff alleges she was not allowed to perform corrective action with her docket. Others have acted in the same manner and have not been counseled.

35. During approximately March 2001 the Plaintiff forwarded an e-mail message to the Commissioner of Patents, Nicholas Gidici, informing him of the discriminatory treatment she receives from John Barlow and Dir. Howard Goldberg. She related instances of holding her cases and applying different work standards to her examination. She further indicated John Barlow and Howard Goldberg hid all of the patent applications in her area of examination refusing to acknowledge the applications

he does not have with other examiners. She believes that her work was being challenged in a competitive manner that is different from her white peers. In spite of lack of support from her supervisor, Plaintiff passed the partial signatory program. She felt like she went through the program alone and her fear of not being successful surmounted.

41. Plaintiff alleges that her Barlow systematically released every probationary minority examiner in his art unit that was selected by the hiring committee up to and including the time the initial EEO complaint was lodged. She believes this practice is racially discriminating.

42. Overall, plaintiff received less in bonuses and lower ratings than others similarly situated co-workers for the same or better production and quality of work.

43. Plaintiff was subject to an intense amount of stress and anxiety regarding allegations set forth herein and was only recently, as of the date of this filing, diagnosed to have sustained injuries by such activities subjected to herein.

### VII. Causes of Actions

As pertains to the facts below, Plaintiff has been subject to violations in accordance with the Standards of Law indicated in section V, herein:

a. In light of the facts presented in items 1-43, Plaintiff was sexually harassed and received latent injuries attributed thereto.

b. In light of the facts presented in items 1-43, Plaintiff was unlawfully discriminated against based on race.

c. In light of the facts presented in items 1-43, Plaintiff was unlawfully discriminated against based on color.

d. In light of the facts presented in items 1-43, Plaintiff was unlawfully discriminated against based on sex.

e. In light of the facts presented in items 1-43, Plaintiff was unlawfully discriminated against based on reprisal.

f. In light of the facts presented in item 27, Plaintiff's was subject to a hostile work environment.

g. In light of the facts presented in items 1-43, Plaintiff was intentionally unlawfully discriminated against based on race.

h. In light of the facts presented in items 1-43, Plaintiff was intentionally unlawfully discriminated against based on color.

i. In light of the facts presented in items 1-43, Plaintiff was intentionally unlawfully discriminated against based on sex.

c. to receive the rightful employment opportunities for which Plaintiff was qualified or cash equivalent caused by V(a)-V(t);

d. to be reimbursed for legal fees and costs;

e. compensatory damages in the amount of $300,000 for each count of discrimination under item V(a)-V(t);

f. any other compensatory damages in an amount that is fair and reasonable

g. actual damages in an amount that is fair and reasonable caused by V(a)-V(t);

h. Restored sick and annual leave, or cash equivalent used in association with severe emotional distress due to injury caused by V(a)-V(t);

i. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each count if the jury finds that, under the disparate treatment theory, Plaintiff was intentionally discriminated against;

j. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each count of negligence caused by V(p);

k. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(a) herein;

l. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(b) or V(g) herein;

m. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(c) or V(h) herein;

n. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(d) or V(i) herein;

o. Punitive damages in the amount of fifteen million dollars ($15,000,000) for each violation caused by item V(e) or V(j) herein;